People v Warren (2018 NY Slip Op 02508)





People v Warren


2018 NY Slip Op 02508


Decided on April 12, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 12, 2018

108106

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
KEVIN WARREN, Appellant.

Calendar Date: February 16, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Clark and Rumsey, JJ.


Rounds & Rounds, LLP, Kingston (Alexis K. Rounds of counsel), for appellant.
D. Holley Carnright, District Attorney, Kingston (Joan Gudesblatt Lamb of counsel), for respondent.


Clark, J.

MEMORANDUM AND ORDER
Appeal from a judgment of the County Court of Ulster County (Williams, J.), rendered November 13, 2015, (1) upon a verdict convicting defendant of the crimes of driving while intoxicated and aggravated unlicensed operation of a motor vehicle in the first degree, and (2) upon his plea of guilty of the crime of aggravated unlicensed operation of a motor vehicle in the first degree.
In May 2014, following a traffic stop of a vehicle that he was allegedly driving, defendant was charged by indictment with driving while intoxicated and aggravated unlicensed operation of a motor vehicle in the first degree. Upon completion of a
suppression hearing, County Court ruled that there was probable cause to arrest defendant and that evidence of defendant's refusal to submit to a chemical breath test would be admissible at trial. The matter proceeded to a jury trial and defendant was convicted as charged. County Court subsequently sentenced defendant to an aggregate prison term of 2&frac13; to 7 years [FN1]. Defendant now [*2]appeals, and we affirm.
Initially, we reject defendant's contention that he was arrested without probable cause. "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place" (People v Bigelow, 66 NY2d 417, 423 [1985] [citations omitted]; see People v Guthrie, 25 NY3d 130, 133 [2015]). At the suppression hearing, the arresting officer testified that, prior to effectuating the traffic stop, he had observed the vehicle travel in the opposite direction of him in excess of the posted speed limit and cross the double yellow line into his lane of traffic, causing him to swerve to avoid a collision. The officer stated that he turned his patrol car around to follow the vehicle and further observed the driver fail to signal a turn and erratically pull into a gas station. The officer asserted that he then activated his emergency lights, initiated a stop of the vehicle [FN2] and, as he came around a corner to where the driver had parked, "observed a person moving from the driver[] seat over a center console into the passenger seat." The officer testified that, upon approaching the passenger side, he found defendant to be "very short with his answers" and to have "bloodshot[,] glassy eyes" and an odor of alcohol emanating from his breath. According to the officer, defendant admitted that he had been drinking, but claimed that he was not driving and, despite the absence of footprints in the freshly fallen snow outside the driver side door, maintained that the driver had fled. The officer testified that, because defendant appeared to be engaging in confrontational behavior, he asked defendant to step out of the vehicle and, thereafter, watched defendant stumble as he walked. Defendant subsequently refused to submit to field sobriety testing at the scene unless it was recorded.
Considering the totality of the circumstances (see De Lourdes Torres v Jones, 26 NY3d 742, 759 [2016]; People v Bigelow, 66 NY2d at 423), the officer's observations prior to and during the stop, together with defendant's admission that he was drinking, were sufficient to support a reasonable belief that defendant had committed the offenses of reckless driving (see Vehicle and Traffic Law § 1212) and driving while intoxicated (see Vehicle and Traffic Law § 1192 [2]). Although defendant maintained that he had not been driving, his claim was belied by the officer's observation of a person climbing from the driver seat to the passenger seat and the absence of any footprints in the snow outside the driver side door. Additionally, the fact that defendant did not submit to field sobriety testing at the scene is not fatal to a finding of probable cause to arrest for driving while intoxicated (see People v Wallgren, 94 AD3d 1339, 1341 [2012]; People v Kowalski, 291 AD2d 669, 670 [2002]). Accordingly, the officer had probable cause to arrest defendant for reckless driving (see People v Stafford, 39 AD3d 774, 775-776 [2007], lv denied 9 NY3d 882 [2007]) and driving while intoxicated (see People v Fenger, 68 AD3d 1441, 1443 [2009]; People v Kowalski, 291 AD2d at 670; People v Barnum, 175 AD2d 332, 333-334 [1991], lv denied 78 NY2d 1126 [1991]). Furthermore, the arresting officer's discovery at the scene — made after running defendant's driver history — that defendant did not have a valid driver's license constituted probable cause to arrest him for aggravated unlicensed operation of a motor vehicle in the first degree (see Vehicle and Traffic Law § 511; People v Howard, 19 AD3d 1073, 1074 [2005], lvs denied 5 NY3d 853, 857 [2005]). As his arrest was supported by probable cause, County Court properly denied defendant's motion to suppress any statements he made after his arrest.
Defendant also argues that County Court should not have allowed the People to present, [*3]as proof of consciousness of guilt, evidence of his refusal to submit to a chemical breath test. He maintains that neither his words nor his actions constituted a refusal and that he was not adequately advised by the arresting officer that his persistent requests to speak with his attorney before deciding whether to submit to the chemical test would ultimately be construed as a refusal. Under the circumstances of this case, we are unconvinced.
While "[a]ny person who operates a motor vehicle in [New York is] deemed to have given consent to a chemical test . . . for the purpose of determining the alcoholic . . . content of the blood" (Vehicle and Traffic Law § 1194 [2] [a]), a motorist may refuse to voluntarily submit to the chemical test, provided that he or she is first warned, "in clear and unequivocal language," of the consequences of such refusal (Vehicle and Traffic Law § 1194 [2] [b], [f]). By statute, an informed refusal to submit to a chemical test results in the immediate suspension and subsequent revocation of the motorist's driver's license for a period of one year, and the refusal will be admissible in any resulting criminal trial (see Vehicle and Traffic Law § 1194 [2] [d], [f]). Where a defendant arrested for driving while intoxicated asks to contact an attorney before responding to a request to submit to a chemical test, he or she "should be afforded such an opportunity," so long as "it is feasible for the police to allow [the] defendant to attempt to reach counsel without unduly delaying administration of the chemical test" (People v Smith, 18 NY3d 544, 549 [2012]; see People v Washington, 23 NY3d 228, 232 [2014]; People v Keener, 138 AD3d 1162, 1163-1164 [2016], lv denied 27 NY3d 1134 [2016]). However, "'[i]f the lawyer is not physically present and cannot be reached promptly by telephone or otherwise,' a defendant who has asked to consult with an attorney can be required to make a decision without the benefit of counsel's advice on the question" (People v Smith, 18 NY3d at 549-550, quoting People v Gursey, 22 NY2d 224, 229 [1968]).
It is not mandatory that a refusal to submit to a chemical test be expressly communicated in order to be admissible at trial (see People v Smith, 18 NY3d at 550). Rather, "[a] defendant can signal an unwillingness to cooperate that is tantamount to a refusal in any number of ways, including through conduct" (id.). In determining whether a defendant's words or actions constitute a refusal, courts must "view [the] defendant's actions in light of all the surrounding circumstances and draw permissible inferences from equivocal words or conduct" (id. at 551). In essence, for a refusal to be admissible at trial, there must be "a record basis to show that, through words or actions, [the] defendant declined to take a chemical test despite having been clearly warned of the consequences of refusal" (id.; see People v Franco, 114 AD3d 1152, 1153 [2014], lv denied 23 NY3d 962 [2014]).
The evidence credited by County Court at the suppression hearing established that, at 12:30 a.m., the arresting officer warned defendant that "[a] refusal to submit to a chemical test [would] result in the immediate suspension and subsequent revocation of [his] license or operation privilege" and that "[w]hether or not [he was] found guilty of [driving while intoxicated, his] refusal to submit to a chemical test [could] be introduced into evidence against [him] at any trial proceeding or hearing resulting from [his] arrest." The officer testified that he then asked defendant if he would "submit to a chemical test of [his] breath for alcohol," and defendant replied, "no, not without an attorney." Defendant was then given an opportunity to call his attorney, but was unable to reach him and left a message. The officer stated that, 10 minutes later, without having received a return call from defendant's attorney, he reread the same refusal warning to defendant, and defendant again stated that he would not submit to the test without an [*4]attorney. Defendant once again called and was unable to reach his attorney [FN3]. The officer testified that, after 10 more minutes had passed, he read defendant the refusal warning for a third time, and defendant again stated that he would not submit to the test without an attorney. Defendant was afforded a third opportunity to contact his attorney, to no avail, and he was ultimately deemed to have refused the test. According to the arresting officer, at least once during the administration of the three refusal warnings, although he could not recall the precise wording or timing, he advised defendant that, after the required 20-minute observation period expired, they were going to "go on," regardless of whether defendant reached his attorney. The officer stated that the 20-minute observation period began at 12:20 a.m.
The foregoing evidence clearly established that defendant was repeatedly and accurately warned of the consequences of refusing to take the requested chemical test and afforded ample opportunity to seek the advice of counsel on the advisability of submitting to or refusing that test (see People v O'Rama, 78 NY2d 270, 280-281 [1991]; People v Peabody, 206 AD2d 754, 755 [1994]). Additionally, although the arresting officer could not recall with precision what he stated or when, the evidence demonstrated that defendant was advised at some point during the administration of the three refusal warnings that he had a limited period of time within which to reach his attorney — indeed, until the expiration of the 20-minute observation period — and that they would proceed with a refusal even if he did not ultimately connect with counsel. Notwithstanding the officer's advisement in this regard, defendant's persistent inability to reach his attorney and the passage of the 20-minute period, defendant did not waver in his assertion that he would not submit to a chemical test "without an attorney." Thus, upon consideration of all attendant circumstances, and "drawing all permissible inferences in the light most favorable to the People" (People v Smith, 18 NY3d at 551), we find that a reasonable person in defendant's position would have understood that his third request to speak to an attorney, made roughly 20 minutes after his first request and 30 minutes after the start of the observation period, would be interpreted as a refusal to submit to the chemical breath test (see People v O'Rama, 78 NY2d at 280-281; compare People v Smith, 18 NY3d at 549-550). Accordingly, County Court properly ruled that evidence of defendant's refusal was admissible at trial (see Vehicle and Traffic Law § 1194 [2] [f]). In any event, given the quantity and quality of the evidence tending to establish defendant's guilt on the charge of driving while intoxicated, we would find any error in admitting proof of defendant's refusal at trial to be harmless (compare People v Smith, 18 NY3d at 552).
Defendant's remaining contentions are either unpreserved or without merit. Specifically, in the absence of an objection, defendant failed to preserve his assertion that, through its questioning of a prosecution witness, County Court exceeded its role as a neutral arbiter and became an advocate for the People (see People v Anderson, 114 AD3d 1083, 1087 [2014], lv denied 22 NY3d 1196 [2014]; People v Parrotte, 34 AD3d 921, 921-922 [2006]). Defendant likewise failed to preserve by timely objection his appellate claim that, during summation, the People improperly shifted the burden of proof to him (see People v Kerley, 154 AD3d 1074, 1076 [2017], lv denied 30 NY3d 1106 [2018]; People v Fiorino, 130 AD3d 1376, 1380 [2015], lv denied 26 NY3d 1087 [2015]). Finally, we are unpersuaded by defendant's contention that the failure to raise these objections at the suppression hearing and during the People's summation amounts to ineffective assistance of counsel, as an examination of defense counsel's performance, viewed in totality, reveals that defendant received meaningful representation (see People v Abare, 86 AD3d 803, 805-806 [2011], lv denied 19 NY3d 861 [2012]; People v Elwood, 80 AD3d 988, 990 [2011], lv denied 16 NY3d 858 [2011]).
To the extent that we have not expressly addressed any of defendant's remaining arguments, they have been examined and found to be without merit.
McCarthy, J.P., Egan Jr., Devine and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant was also sentenced upon his plea of guilty to aggravated unlicensed operation of a motor vehicle in the first degree, as charged in a separate indictment. However, defendant raises no arguments in his appellate brief with respect to that aspect of the judgment of conviction.

Footnote 2: Defendant conceded at the suppression hearing that the officer had reasonable suspicion to stop the vehicle.

Footnote 3: The officer testified that he also permitted defendant to contact a friend at this time.